Good morning your honors may it please the court my name is Richard Novak and I am counsel with Iris Rowe who's present at council table for defendant James Nannetti Leon Guerrero who is one of two defendants charged in a federal death penalty proceeding in the Eastern District of California. This is an authorized death penalty proceeding which means that the Department of Justice has already directed the United States Attorney to seek the death penalty against both defendants and I just want to take a moment to also acknowledge that the mother and other family members of the victim of the charged homicide is present in the courtroom today Ms. Rivera. I'd like to try to reserve two minutes for rebuttal if the court will allow that and I want to address four different issues. We are here on an interlocutory appeal so I'd like to address the jurisdiction issue unless your honors tell me that's not necessary. I'd like to address the posture of the three different parties that are before the court. I'd like to address the standard of review and I'd like to then of course address the substantive issues. With respect to Yes. With respect with respect to the jurisdiction issue we believe that collateral order jurisdiction is is clearly appropriate here based on this court's 2008 decision in the United States versus Higuera Guerrero which is a panel decision written by Judge Kaczynski in which he said that the unsealing of a district court document is subject to immediate review by this court and this falls squarely under that. We have previously filed under seal two competency evaluations of our client Mr. Leon Guerrero one by a defense expert one was retired ordered those documents sealed. We then filed a motion to seal a forthcoming competency proceeding concerning Mr. Leon Guerrero and in the course of denying the motion to seal the hearing District Judge Pro who is sitting by designation from Nevada in this case in Fresno unsealed ordered unsealed the competency evaluation reports. He also denied the motion to collateral order doctrine. This is a little different circumstance here. Now you're not trying to keep these documents from the co-defendant or from the government. That's exactly correct your honor. So that's you know that's a serious issue in terms of irreparable injury. Basically the only people you're trying to keep it from are the media. Well and the public because we our client does have a anticipated trial which. Well I when I said media I meant public. That's how the vast majority of the public gets to hear about these things is through the media right. I mean the whole community is not going to come to the courthouse. So essentially we have a very different type of analysis here because generally in these things when somebody's trying to keep something sealed they're trying to keep it sealed so the other side doesn't see it for some reason strategic reason. But in this case the co-defendant initially the co-defendant was there was an issue about whether the co-defendant should get it. Well that's been conceded now. Yes absolutely. And and so now the government's got it. They've already got it. That's right we provided it. Right so it's basically what we've got is a First Amendment issue here. Well we also have a Sixth Amendment issue here and I think we have an attorney-client confidence issue here and that's why we really think that at a substantive level Biddeker while Biddeker arises in a civil habeas proceeding which technically is a civil proceeding but arising out of a criminal proceeding is really at a substantive level what we think controls here. And in fact Biddeker came to this court on collateral order jurisdiction for the exact same reason which was that if the client materials were not subject to some sort of protective order they may be used later or or may be prejudiced defendant and in fact. Collateral order doctrine has a three-pronged test. Yes it does. And I think perhaps maybe meet the first time I have a more concern over the third prong so can you discuss that please? Well we believe that all three prongs apply because it's an important issue. It's not reviewable after. Why not? Well because once all of these materials once all of these materials are released this court can do nothing to in a sense put the cat back in the bag. I think that's the phrase that Judge Kaczynski used in Higuera-Guerrero. Once anything that is arguably privileged or should be reviewed for the existence of a privilege has been disclosed it doesn't do any good to come back after there's a conviction and review that on appeal. Now so does that answer your Honor's question? I mean I just I don't see how if if the issue is one of privileged materials being disclosed to the public that can be meaningfully reviewed after they've been disclosed. That was the whole point. Did the district court though state that there's different things that can be done to make sure that this can be reviewed in a fair manner? Careful screening of prospective jurors and moving the trial to a different venue. Alternative options in protecting his right to a fair trial. And I think one thing that the district courts as Your Honor's know in capital habeas proceedings is to temporarily seal the record, either the entire record of in this case the competency hearing as opposed to an evidentiary hearing in a habeas proceeding and direct the parties to brief the question of which portions they believe should or should not remain  until the completion of the proceeding. So, for example, in this situation, we would have at least one mental health professional, maybe more, maybe even counsel, testifying in a competency proceeding about things which are otherwise obviously privileged as attorney-client communications or attorney impressions, attorney work product. Okay? Those matters under Bitteker, under Kamakana, under White v. Ryan, which is a district court case in Arizona, as I believe Your Honor knows, very typically those portions of an evidentiary hearing are sealed, and then the parties brief which portions need to remain sealed or not be sealed. So what we really think should happen in this case is that a portion, at least a portion of the competency hearing, those portions that clearly relate to attorney-client communications and impressions, because that's really what the Sixth Amendment is about in terms of competency. In this situation, it's about the defendant's ability to assist counsel. The only way the district court can get to the heart of the ability to assist counsel is by hearing about counsel's impressions or experts' impressions of the communications that have been provided to the expert. So what we believe should happen, and I see I'm already getting down to my two minutes,  I was asked to address the jurisdiction. Kennedy. Just on the allocation that some clerk made about the importance or complexity of this case, and since we've taken most of your time on the collateral issue, I think you ought to feel free to take more time on the substantive issue. All right. Very well. So let me just very quickly address the other source of jurisdiction. We think it's mandamus review. Okay? This Court has never, and I don't believe any circuit court, has ever squarely addressed the constitutional question of whether there is a public right of access or a common law right of access to competency proceedings in a death penalty case. Okay? What we have is a magistrate decision, which I believe at least the second half of it is well taken, a magistrate opinion out of the District of Arizona in Kern v. United States, which is cited in all the parties' papers, that even if there is a constitutional right of access to a competency proceeding, when you're dealing with attorney-client communications, you're dealing with a defendant's otherwise confidential medical records, when you're dealing with third-party privacy issues, as this Court acknowledged in Kaczynski, that proceeding should be sealed because that overcomes the public's right of access. Now, I would concede that in a general sense, the public should understand how competency proceedings work, the balancing of interests, the need for a defendant to be competent, and what that means. The public should understand that. But that doesn't mean that in the first instance at the hearing, anybody should be able to come in and just hear everything about attorney-client relationships. So we believe that is an issue of first impression. We believe that is an important issue of first impression. And that's part of the mandamus question. The other part of the mandamus question, with all due respect to the district court, is to say that the defendant has waived his attorney-client privilege by placing competency at issue seems to me to run directly counter to this Court's embanked decision in Biddeker, because you don't waive your attorney – you don't waive your right to confidential communications, even in a habeas proceeding. Even when you bring an IAC, that's not deemed a waiver for all proceedings in the future. You've put your attorney-client relationship at issue in that particular proceeding, and that's why we have Biddeker orders. That's why we have sealing of much of the material that comes in under Biddeker. So we believe, and for the other reasons, that mandamus review is appropriate, and I've probably taken more time on the jurisdictional issue than is necessary. I think Your Honor stated very directly the way the parties are aligned here. The government did not take a position on the original motion to seal. Of course, they have the right to defend the district court's order on review. The co-defendant, Mr. Sablon, who's represented by ABLE counsel, opposed that, and the district court said, no, Mr. Sablon has his own fair trial rights to see what's going on in this trial, and so we, in a sense, have conceded that he should be there, his counsel should be there, and that there should be some sort of a protective order that we think that the district court should impose that will allow Mr. Sablon to use those materials if necessary. There's probably some Brady issues there. But, you know, I haven't seen, obviously, all of the communications, but I've, without getting into what they are, because I don't want to be defeating the whole purpose of the appeal by laying out what your client's situation is. The bottom line is that when I look at these things, now, Judge Merguia, when she was sitting as a district judge, presided over a death penalty case. I'm in the middle of one now, and the kinds of things that you're concerned about are the very kinds of things that the lawyers in my case, and I'm quite sure the lawyers in Judge Merguia's case, were interested in putting on before the jury in a public forum for purposes of mitigation. I don't – well, so what Your Honor is saying is that because I might put on in mitigation No, I'm just saying you're talking about irreparable harm, and I'm looking at where's, you know, whether this thing can be corrected later. Maybe I'm misunderstanding Your Honor's question, but I don't know how in a capital trial proceeding, not a habeas proceeding, but in a capital trial proceeding, I can put on evidence of my client's interaction with counsel. You're talking about a sentencing proceeding as opposed to a trial. I think, if I understand Judge Ezra, he's saying that later on in the sentencing proceeding, this is the very material you will put on. No, I don't – well, first of all, the competency determination is not admissible in a penalty phase. My expert is not saying that. No, I'm not talking about that. Then I don't understand your question, Your Honor. Judge Reinhardt does, fortunately. I think there's a good answer to his question, to Judge Ezra's question also. But what he's saying is that why is it irreparable if the sentencing jury is likely to hear the same evidence later? And the sentencing jury is not going to hear, number one, an opinion about competency, because as Your Honor knows, that's not admissible under the Federal rules. I cannot tell a penalty phase jury that my client – that we believe my client was or was not incompetent. And then the question is, well, what about the underlying data? Well, it depends upon what your defenses are. I don't know what your defense is. And I'm not – believe me, I'm not trying to be pedantic, but we're not talking about insanity. We're not talking about diminished capacity. We're talking about the competency to proceed.  of the jury. I fully agree with you. Now, the underlying data, which Your Honor may be referring to, which is can – will a psychologist or a psychiatrist come to court and tell a penalty phase jury that my client was unable to work with me because of a mental illness? I think that gets too close to competency. She may express the opinion that he has a bipolar disorder or that he's mentally – No, no, no. There were other things in the materials that are not directly related to that. Well, you're right. And I think that we can make it clear that there is a – that there is a neuropsychological evaluation report which does not discuss competency, and that would be admissible in a penalty phase. That's what I was talking about. But we're really talking about attorney-client communications that go to the foundation for the inability to assist, because you can have somebody who has very profound neuropsychological deficits or, as the record is clear in our case, a defendant whose IQ is in the – is in the mild mental retardation range, but he still may be able to work with counsel, okay? So it's really a – it's – it is really a separate set of data, which is communications among counsel about the client and summaries of communications between the defendant and his counsel that go to the heart of Cooper v. Oklahoma, his ability to assist counsel. And so what we are saying is that those materials – that's really the first tier. Those materials should not be available to the public because that is the harm that Bitteker talks about. Bitteker talks about the fact that the mere release to the public of attorney-client communications, even when it's put at issue in an IAC claim, is a harm to the defendant. And so, really, the – one of the merits questions is, is this really a waiver? And we think under Bitteker it's not a waiver. It's even a stronger case than Bitteker, because we haven't made a strategic decision to file an IAC claim. We have a – we have an obligation to our client and we have an obligation to the court and to the Constitution to bring his competency forward. And we could – we could soft-pedal it. We could say, oh, we don't think he's competent. Let the BOP do the evaluation. We don't want to offer anything and then submit on it. But that's not really true to the defendant's constitutional rights. If the defendant truly has a pervasive inability to assist counsel, we believe we have an obligation to bring that to the court and to establish it. And the way we have to establish that, because of one of the prongs of competency, is to address the fact that he can't communicate in a rational way with his counsel. And I understand that Your Honor hasn't looked at all of those materials because the under seal record is quite voluminous. We tried to summarize the sources of information. And, you know, I just also want to say one other thing about the way we think this should be returned to the district court, because I think you've been very generous with your time, Your Honors. The way this should go back to the district court is if this court concludes that there is a First Amendment or a common law right of access to competency proceedings generally, that needs to be balanced against the defendant's Sixth Amendment and attorney-client rights, as is acknowledged in Whittaker – Whittaker, it should be temporarily sealed, as the district courts do, for example, in the Eastern District under what they call an Osband order, which is to seal portions of a habeas proceeding that deals with attorney-client issues. The parties should be ordered to basically brief after the hearing which portions should or should not be sealed under the principles that we're talking about. And the court can then release a portion of the transcript. And then when the proceeding is over, as in Kaczynski, because what we remember is that Ted Kaczynski's competency report, after he was sentenced, was redacted by Judge Burrell and then released to the public. And the reason why it was redacted was to protect the privacy interests of third parties. I just had a quick question. It wasn't – I don't remember. I'm trying to find out. At the district court level, did you attempt to redact, say, or in an effort, compromise and say, oh, well, then can we at least have this part redacted, or we won't unseal this, or that? Was that – Well, Mr. Sablon's briefs make the point that we didn't offer any compromise in that sense. And all I can say about that, Your Honor, is that we were scheduled for a hearing on this motion to seal the proceeding before Judge Wanger. So was it all or nothing, huh? No. What I was going to say is that Judge Wanger scheduled a hearing. Before that hearing could occur, he retired and it went off calendar. Judge Ishii, as the chief judge of the Eastern District, handled the matter for a while. He never scheduled a hearing. Then we were assigned to Judge Proe. Judge Proe said, okay, I understand where the case stands procedurally. We'll get back in touch with you. And before there was ever a hearing where I could show up and say, why don't we deal with this in, like Your Honor says, in a compromise, in sort of a gradual way, the district court issued its three or four-page order basically denying the motion and finding that there was this waiver of the attorney-client privilege, which I think everybody – well, which even Mr. Sablon agrees is not accurate. And you filed a motion for reconsideration? No, we did not file a motion for reconsideration. We filed a notice of appeal, and then we asked the – well, then we get into issues of stay. And I don't think that is responsive to Your Honor's question. You suggested what we do under one circumstance, and you suggested basically what, in line with what Judge McGeer is asking, is a compromise. What do you suggest if instead of agreeing essentially with your co-counsel and the district court that this is a case in which there is irreparable injury if this material is released, and that there, say, for example, is a First Amendment interest, but it's overcome by the other interests, and in essence you were to win instead of losing, what would your suggestion then be? Well, the suggestion would be that in the first instance that the entire record of the proceeding should be sealed because we've overcome the First Amendment interest. And I will acknowledge, and I think that the court should end – well, I would just – I would acknowledge that if you look at the Oklahoma City bombing case, there was lots of litigation over what should be available to the public. And at the end of the day, what the district court said was when the case is over and all of the rights have been protected and interests have been protected, the public is entitled to know much more than it is entitled to know prior to trial. And so I would be willing to say, Your Honor, that the public's – the history and logic needs to be looked at in a phased situation, okay? Certainly the logic part of it. What is the logic of the public having access now to my client's confidential attorney client, medical, third-party, private information versus what is the logic when the proceeding is over and final? And I think that the logic part of it allows the court to fashion that kind of a compromise. I am not suggesting, and I hope I wasn't interpreted this way, as suggesting that some portion of the attorney client materials should be – or the private medical materials should be disclosed prior to the trial of the matter. And frankly, even the post-conviction proceedings, because you may end up going back for a retrial if necessary. So I hear what Your Honor is saying. I didn't mean to suggest that any of the attorney client materials really should be accessible to the public before the proceeding, but certainly there may be parts of the proceeding which don't rise to the level of keeping the public. And that would take place after the proceeding? A question of sort of bartering or working out what's disclosable and what's not? Well, I'm talking, for instance, about a hearing, a competency hearing. Okay. So we have a competency hearing. There is a record. The record is sealed. And just the way the courts implement the sealing provisions under Biddeker, the record is sealed, and then the parties have to work out to the district court or the district court can refer it to a magistrate, which portions they believe should remain sealed and not sealed. Now, if Your Honor says, you know, that works too much of a burden on the court and the litigants, then I think I prefer Your Honor's approach, which is basically to say there is no public right of access that is over – that is not overcome by the defendant's harms, by permanent harm. And so I think … If we were to say that there is a First Amendment right, but it's overcome by the harms, you would then suggest that the district court would look at that again after the hearing has occurred? Well, I think that it would be appropriate for this court to define exactly when that harm is reduced enough – and I'm not trying to push the work in any particular direction – I think that I would say that that harm is lessened after the proceeding is final. Okay? So, for example, if we're able to work out a disposition of this case with the government, and it never proceeds to trial, for example, in the way Mr. Kaczynski's case was resolved. When Mr. Kaczynski's case was resolved, which was also a capital proceeding in the Eastern District, we had a redacted competency report released to the public. Because as this court said, and Your Honor concurred in that case, as obviously you know, the public has a right to know at the end of the day why Mr. Kaczynski did what he did and what his mental condition was. But that was certainly not something that should be known prior to trial. You know, what his ability to work with his attorneys was or was not, or what the private medical information is, or very, very, very sensitive third-party information that goes into an assessment of whether a defendant has a history of mental illness. All right. Thank you, counsel. Thank you very much. I appreciate the time that the Court has provided. We'll give you time for rebuttal. Thank you. Counsel, have you and your co-counsel agreed on a division of time? Yes, Your Honor, we have. Good morning. May it please the Court. Opposing counsel. My name is Tyvone Chardell. I'm from the Federal Defender Office for the Eastern District of California, and I represent Joseph Sablon in these proceedings. You might keep in mind that whatever division you've made, when it was 10 minutes, that it's now up to 15. Thank you, Your Honor. I shall. In order to obtain the relief he seeks, Mr. Leon Guerrero must overcome two policies that are essential to the functioning of the Federal courts. The first is the policy against piecemeal litigation, and the second is the policy in favor of open access to judicial proceedings. I'll address those two things in order. What is the harm to your client if your client has access to all of this material and it's only the public that doesn't? Your Honor, I anticipate because Mr. Leon Guerrero is seeking an order that would seal the material through an appeal and post-conviction proceedings, and Mr. Leon Guerrero seeks an order that would preclude Mr. Sablon from being heard in the district court on what material could be unsealed before the conclusion of post-conviction proceedings, that he intends to argue that Mr. Sablon could not make public in his own trial or disseminate to experts in preparation for his trial the matter sealed by this Court. So Mr. Leon Guerrero's goal in this appeal is to prevent Mr. Sablon from being   He's seeking to prevent Mr. Sablon from taking the information he receives in the competency hearing, exposing it to his experts so that they can help him prepare for trial, and then exposing it to the jury and the public during his own trial. Otherwise, this appeal serves no purpose. If Mr. Sablon is free to use in his own trial this information, it's no longer sealed, unless, of course, Mr. Sablon is not going to go to trial. And this Court would issue an order that says Mr. Sablon cannot be brought to trial until after the conclusion of post-conviction proceedings related to Mr. Leon Guerrero. That is the only way Mr. Sablon would not be harmed in that sense, although he would probably be harmed in the sense of the delay would prejudice him. I never knew capital defendants who were bothered about delay. A fair point, Your Honor. I think in this instance, though, it would probably be prejudicial to Mr. Sablon's ability to put on his defense. In order to overcome the presumption against piecemeal litigation, interlocutory appeals, Mr. Leon Guerrero attempts to distinguish Mohawk Industries on grounds that that is a civil case, whereas this is a criminal case. However, the Supreme Court has said that the policy against piecemeal appeals is especially compelling in criminal justice matters. Justice Frankfurter, writing in Cobbledick v. United States in 1940, said the correctness of a trial court's ruling, even on a question of constitutional rights by the defendant in the course of the prosecution, must await conviction before that ruling can be reconsidered by an appellate tribunal. That should be the end of this case. This appeal should be dismissed because it is clear that there is no interlocutory jurisdiction, even of a constitutional rights claim that is made in the course of the trial proceeding. It is in double jeopardy. I'm sorry, Your Honor? I said it is all right in double jeopardy cases. That's correct, Your Honor, but I don't think there is any issue of double jeopardy. Well, that's a criminal appeal. Correct. But the rights Mr. Leon Guerrero is complaining would be violated, or his right not to be tried by a jury pool that is exposed to prejudicial pretrial publicity. That interest is routinely vindicated on direct appeal. It was vindicated in Moomin v. Virginia, or at least it was considered in that case. It's been raised in this Court on many occasions. So there is an appellate remedy here. This Court has applied Mohawk Industries in a habeas case, in Thompson v. Frank, for example. This Court applied Mohawk Industries when it dismissed an attempted interlocutory appeal by the State of Hawaii of a stay-abeyance order made by the District Court. This Court held that because the State of Hawaii had a remedy after final judgment, there could be no interlocutory appeal. That is the case here. There is no dispute that the type of claim Mr. Leon Guerrero is asserting here, prejudicial pretrial publicity, is routinely raised and vindicated on direct appeal. Therefore, there can be no interlocutory appellate. What about his claims about his attorney-client work product and all of that getting out into the press? That, too, should- That's what he was emphasizing here. I believe he's complaining about the effects of that, not the disclosure in itself. He suffers no harm from the disclosure in itself. And on that point, I'd like to just mention Bitteker. It's been raised a number of times here. I've litigated a number of these Bitteker cases. I'm counsel in Osband, the case that Mr. Novak referred to. Bitteker is nothing like this case. It is not about the public.  was seeking to provide the district attorney's office with information from the trial attorney's file. A Bitteker protective order creates a firewall between the attorney general defending the habeas action and the district attorney who would prosecute the retrial. That's not what we're talking about here. Mr. Novak could have sought a firewall of that type, of the type in Bitteker, but he did not. He has elected to have the material be provided to counsel for the government, be provided to counsel for Mr. Leon Guerrero. Certainly, he cannot claim that Mr. Leon, I'm sorry, for Mr. Sublon, certainly he cannot claim that the risk to Mr. Leon Guerrero of public exposure to this material is as great as the risk to Mr. Bitteker of the prosecutor in a retrial being able to use the contents of his trial attorney file. Those two things aren't remotely alike. So that, I think, distinguishes the situation of disclosing attorney-client privileged matter. In order for Mr. Leon Guerrero to overcome the presumption of public access to judicial proceedings, contrary to counsel's argument, it is not necessary for this court to answer the question whether the First Amendment applies. It is not necessary for this court to address the issue of waiver because Mr. Leon Guerrero failed to satisfy any element of the test for closing judicial proceedings in the district court. He conceded in the district court that he did not file a properly noticed motion to seal the competency hearing. We heard him argue here that he did file such a motion. He did not. He lodged a motion behind a request to seal. Mr. Leon Guerrero's counsel conceded, and you'll find this in Appellee Intervenors' Supplemental Excerpts of Record at page 11, Mr. Novak conceded in the district court that if the district court denied his request to seal the motion, he would have to file it publicly because it had not been placed on the court's docket. So there was a failure to follow Phoenix newspapers, this Court's decision in United States v. Biagon, there was no notice to the public that there would be a motion to seal the competency hearing. He fails at the first hurdle. Secondly, the district court found that Mr. Leon Guerrero failed to show to make any particularized showing about how the disclosure of these materials would prejudice him. He does not contend in this appeal that that finding of fact was erroneous, much less clearly erroneous. Indeed, Mr. Leon Guerrero has never attempted to satisfy the standard for proving that the attorney-client privilege or the work-product doctrine applies to any single statement that he would have sealed. He has made no particularized effort in that regard whatsoever. He fails at the second. Kennedy, I have to ask you, what was your division with the government? It was 70-30, Your Honor. 70-30 of 15 minutes is a 10-minute. So I believe I have 10 and the government would have 5. All right. If that's all right. So how much do you want to save for rebuttal? If I have time, I will save the rest of my time, Your Honor. He doesn't get rebuttal. Huh? Yeah, I don't believe I get rebuttal. He doesn't get rebuttal. Oh, I'm sorry. I'm sorry. You don't get rebuttal. If I may wrap up in just one minute, Your Honor, Judge Reinhart, you quoted Justice Holmes recently, two months ago, in Perry v. Brown, for the proposition that it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed. That is the principle that Mr. Leon Guerrero must overcome. He failed to do that in the district court. He has not shown any error in the district court's finding of fact that jury selection procedures will protect him, that the pretrial publicity has been too sparse, too remote in time, and too localized to create any significant risk that the jury pool would be tainted by any of this information. There has simply been a complete failure to demonstrate any grounds for relief in the district court or in this Court. This appeal should be dismissed. Failing that, the district court should be affirmed. I yield the rest of my time to counsel for the government. Thank you. Thank you, counsel. May it please the Court, counsel. My name is Deuce Rice. I'm an assistant United States attorney for the Eastern District of California assigned to this case. The issue before Judge Proe was whether or not the competency proceedings would necessarily have to be closed in order to protect the defendant's right to a fair trial. And in doing that, he looked at whether or not there was a substantial probability that irreparable damage to his right to a fair trial will result if the proceedings are not closed. Hypothetically, even if the defense counsel took the stand during the competency proceedings and testified that the defendant cannot rationally assist in preparing a defense, how would that create an irreparable damage to him getting a fair trial later in the case? Even if that was preempted. Would you rather find out after we go through the length of time it takes a death penalty case to proceed to its end and then have to try it again, then have to have that answer now? Well, supporting Judge Proe, I would say the answer would be yes to that. On my own side, I would say no. It probably is not worth it. But in general, the government can't agree to the closure of criminal proceedings absent approval from the Deputy Attorney General. Well, fortunately, you're here, not the Deputy Attorney General. And you're probably more familiar with what a death penalty takes in California, which can be by the time you get through all the appeals, even without habeas, a good 10 years, maybe with habeas 15 to 20 years. And then if you're wrong, you're going to have to start all over. And that's preferable than it would be to having the issue decided now? I don't think so. You know, as a rational person, you know, to the extent that issues can be eliminated from causing a reversal on appeal, I think that's the right thing to do. Is this the kind of issue that would cause that sort of thing? I think, does it rise to that level? Competent proceedings, in my experience, I've been a prosecutor for about 24 years, have been open to the public. I've never seen a closed one. So this would be something kind of new in my experience personally. Is there a real downside to perhaps sealing portions of the competency proceeding like Mr. Novak suggested? Probably not. You know, it probably would make some sense, you know, to protect the case later on to do something like that. But the way Judge Proh analyzed the situation under the law as it exists, in looking at whether or not there was a substantial probability of irreparable damage, he didn't see it. And it's hard to put the... Did he have a hearing? No. No, we didn't have a hearing. And basically, the procedural posture was, as Mr. Novak described it, where there was a kind of a hectic transition between Judge Wanger retiring, Judge Ishii having the case for a short period of time, and then it being assigned to Judge Proh. And we did have some telephone conferences with Judge Proh, but then Judge Proh took basically all the pleadings under submission and then issued the order that brings us here today. But the question, too, is whether or not he abused his discretion, which I think is a pretty high hurdle, you know, for the counsel for Mr. Leon Guerrero to jump. What should be done, what's prudent to be done, is sometimes a different thing on what the judge that's handling the case believes should be done. Well, I guess I just have one question, just in light of what you said here to Judge Reinhart. Is the entire class of claims at issue here related to orders unsealing competency hearings not effectively redressable on appeal? Is that what you're saying? Well, it would be, but I think that the consequence of, you know, like Judge Reinhart was trying to point out was there may be some serious downsides in a capital case because of how long it takes to get through the proceedings to do that, to wait for, say, just to finish the whole case. If you found there was no jurisdiction, not this appeal out, so there was no ruling basically on it, this whole issue would be preserved for later. Well, that's, you know, obviously capital cases are a whole class by themselves, and the importance of a capital case, I think, goes without question. But the Supreme Court is a law we have to follow with respect to collateral order. And there are lots of very long cases that end up getting litigated on issues which the Supreme Court has said cannot be raised until the case is over, pursuant to the collateral order doctrine. It's not just capital cases. I can't disagree with that. I mean, that was the big argument against the collateral order doctrine. It wasn't successful. Right. From my standpoint, I'd like to get through the case with as few issues as possible. You know, so it makes more sense for me, you know, from the government's standpoint, to have this decided now as opposed to later. And it really doesn't matter all that much which way the court goes on whether the constant proceedings should be closed or left open or not. But not having that issue left till after the end of the case, you know, to re-litigate this again, you know, is. Well, strangely, I think if I were your opponent, I'd just as soon lose the case and have a real ground for error than I would to win the case, because I don't think it's going to make that much difference to him. And on your standpoint, I'd rather lose the case now than have to have it litigated 15 years from now. And that's exactly my position. So each side should be hoping to lose. It's a strange world, isn't it? I don't think Mr. Sublon would agree with that. No, Mr. Sublon. I don't think he would. He's shaking his head no, his counsel. But I think he would be happy to lose, too. I don't think so. There's obviously three different positions. There are. It's a very unusual appeal. Yes, it is. Very unusual appeal. I guess I'm out of time, so I'll thank you. I thank you, Your Honors. Thank you, Judge. In rebuttal, just a few points. First of all, with respect to the standard of review, and I don't think I ever got to it, but it was mentioned by counsel. I think the standard of review is de novo. Times, Mirror, this Court's decision basically says that whether or not there's a First Amendment right of access is a question of law subject to de novo review. Whether or not there's a common. What about on whether it's a collateral order? Well, that's a question of first, I mean, that's this Court's question, is whether it's a collateral order jurisdiction. But I think the way Your Honors just said, this is an unusual situation. I mean, that's not one of the factors under mandamus, but I think what we are dealing with here is a question, an important question that has two separate constitutional rights on either side. It's a question of first impression throughout the circuits. It's never been squarely addressed other than by this magistrate opinion in Arizona, which is a relatively recent opinion. And the magistrate found that there were no significant federal court decisions on this issue. Judge Brinkema in the Musawi case has a throwaway footnote which says that there's public access, but no court of appeal in this country. That's on the mandamus issue. That's right. And I still believe, Your Honor, that Mohawk is not applicable to this case. Mohawk, for example, the Supreme Court says in Mohawk, we want to resolve a split in the circuits about collateral order jurisdiction as applied to attorney-client disclosures. There's a footnote that lists all the different cases that either do or do not find below collateral order jurisdiction in that situation. Biddeker is not listed. There isn't a single habeas case that's listed by the Supreme Court. There's no criminal cases. That's all civil litigation where a district judge says, you civil litigant have waived the attorney-client privilege. You must now give those documents over to the other civil litigant. And I think that when you look at Mohawk, you go a little deeper into the opinion, you see that in that situation, a litigant has the choice of disregarding the court's order, suffering contempt, and then taking immediate appeal on the contempt. Suffering issue sanctions. I'm not going to turn that stuff over. Go ahead. Strike part of my pleading. I can't do that because we're talking about my client's competency. And I don't have 1292 jurisdiction. I can't certify this question to Your Honor with the district court's permission because it's not a civil proceeding. So that's why collateral order jurisdiction, we believe, does still exist when you're dealing with criminal matters that deal with, as Judge Kaczynski said in Biddeker, something that's about as close to the Sixth Amendment without clearly being the Sixth Amendment as you can get. And we think mandamus is appropriate here also. You know, with all due respect to counsel for Mr. Sablon, he said that my client's goal is to defeat Mr. Sablon's access to these materials, and that is just simply not true. If the case against Mr. Sablon was dismissed today, none of this would change. We would still be here, we would still have the same issue, which is the confidentiality of my client's- Well, let me ask you a quick question. I know we're way over time. And I appreciate- If you're correct, let's assume that you win exactly what you're asking for here. Would counsel for Mr. Sablon be able to put the materials that he has received from you into evidence in defense of his client? Well, there's- That's a yes or a no. It's a very important question. And I think that- Well, okay. So let me say a couple things. One is, the district court has signed a protective order which says that none of the materials gathered in the competency evaluations are admissible against Mr. Leon Guerrero. Not that they're not admissible, okay? But they're not admissible against Mr. Leon Guerrero. So what we actually probably have at this point, and I think all counsel would agree with this, is we have in a sense a severance, a de facto severance. These two defendants are going to be tried separately because, in part, because of this issue, okay? So can he use them in his trial? Yes, absolutely, okay? I don't think it's appropriate or necessary for this court to fashion that protective order. That's something clearly left to the discretion of the district court. We have protective orders in district court, criminal proceedings and civil proceedings, all of the time. Now, I understand and I respect that Mr. Sablon's goal, if both defendants have to go to trial, is to go to trial second. And so by complaining that he can't use materials which are subject to a sealing order and a protective order to prepare for trial, that is a smart capital litigant strategy for going to trial second if Mr. Leon Guerrero and the government can't resolve the matter. But that doesn't mean that this court has to order the district court to proceed in a particular way. But yes, Your Honor, Judge Ezra, clearly, if they're discoverable, if they are relevant to any defense that Mr. Sablon wants to put on, he can use them. It's just that we have an order which says they can't be used against Mr. Leon Guerrero because, as Your Honor knows, when the defendant participates- But if that's true, if that's true, counsel, wouldn't that make them public? I'm sorry? Wouldn't that make them public? Well, it may or it may not, because the question is- He's going to use them. I don't think there's any question that they're going to be public. It's not may or may not. They would be public. Well, let me ask you- I don't think Judge Posk got the authority. And he's a very talented and experienced and capable district judge. He's not going to close the murder trial. Okay, so what I'm saying, Your Honor, is that the question is what material? In other words, if a psychologist- Didn't somebody say that Mr. Guerrero would go first? No, what Mr. Sablon said is that Mr. Guerrero will go first. That's what Mr. Sablon said. And what Mr. Sablon, and again, I'm not saying this in any derogatory way, I respect that when you have two different defendants in a capital case, and I'm sure Your Honors are all familiar with this, there is a great strategic benefit to the defendant who goes to trial second. I think we all understand why that is. I don't need to waste the court's time with the strategic benefits of watching. Well, would that put you in a position, Judge Ezra's question, of having to agree that you should go first, because the material can't be used against you, but if Mr. Sablon can use the material, as Judge Ezra suggests, it would make it public. Well, I don't- Therefore, your trial should be first when it isn't public. Well, I guess the question really is, what does Judge Proe determine is relevant and admissible? So is my client's statement to me, which we think indicates, has an indicia that he's not competent. Is that relevant to some issue in Mr. Sablon's trial? Is what Mr. Leon Guerrero says to Ms. Roe at a meeting in the special housing unit at Terminal Island going to somehow be deemed relevant in Mr. Sablon's trial? I don't know. Well, and so that's really an issue to be sorted out down the road. I don't think that we can get to the specificity of what evidence is admissible and what evidence is relevant. Well, but the answer is that it's prejudicial to Mr. Sablon if he goes first and it's – and he wants to use that material. Well, first of all, Your Honor- It's not prejudicial if you go first. That is true. We have – he has a Brady right. And in fact, counsel have all acknowledged that some portions of these materials, for example, the Bureau of Prisons psychologist's opinion as to whether or not Mr. Leon Guerrero has a mental illness or not, that may be Brady to Mr. Sablon because we have arguably joint action by the defendants, which unfortunately led to the death of Officer Rivera, okay? But that – so maybe a psychologist's opinion about my client's mental condition or behaviors or whatever it is may be relevant to Mr. Sablon's defense. It may be discoverable. It may be relevant. But that is far afield from attorney-client communications. There are many different types of evidence at issue here. There are opinions of experts, which may be Brady. And then there is the raw data, which forms the opinions about the ability to assist. So I think it's a very fact-intensive question as to what it is Mr. Sablon would want to use at trial that is relevant and admissible. The Brady issue is resolved because he's going to have access to everything subject to a protective order. And I think that that protective order would allow him to prepare for trial. But whether or not something that we think should be sealed because of the attorney-client communication would therefore not be – for that reason would not be admissible at Mr. Sablon's trial, I think is an issue way down the road. I think that's not an issue that this Court has to resolve for Judge Proulx. And I've probably – it's probably noon by now. Can all these issues be resolved if the hearing is closed and then you examine the contents of the hearing? I think that they can be worked out in a much more orderly fashion because what Judge Proulx's order does is basically asks us to now step back and say, well, how much – how much do – are we willing to disclose in a competency proceeding in order to vindicate our client's Sixth Amendment rights vis-à-vis competency? Whereas once the hearing is over – and that's really what these Osband orders talk about in the Eastern District, as Ms. Chardell – Mr. Chardell knows, is – because you can't anticipate what the questions will be. I don't – I don't know if Mr. Rice is going to cross-examine a testifying expert on every single e-mail that she was provided that summarizes my conversations with my client. In other words, is that – all of that going to come into evidence, or is he just going to cross-examine her on the general basis for her opinion? And we've got a BOP doctor on the other side. She's reviewed all of the materials reviewed by the other competency expert. So am I going to now be in a position where I want to cross-examine her on her opinion in the face of all of these attorney-client materials, and I basically open it up to the public? I mean, those are – those are the questions that would be better resolved on a – on a – really a question-and-answer, question-answer basis after the hearing and not trying to anticipate it. Thank you, counsel. Appreciate the Court's time. Thank you, counsel. The case is submitted. The Court will take a brief recess before the next case.
judges: Ezra, Reinhardt, Murguia